KIM L. AND HELEN D. ONG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ong v. Commissioner
Docket No. 8998-77.
United States Tax Court
T.C. Memo 1979-406; 1979 Tax Ct. Memo LEXIS 126; 39 T.C.M. (CCH) 270; T.C.M. (RIA) 79406; September 25, 1979, Filed Kim L. Ong, pro se. Jerome Borison, for the respondent. DAWSON; FALK MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code *127 of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV (1978). [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined a deficiency of $1,857.13 in petitioners' 1974 federal income tax. There are three issues for decision: (1) Whether petitioners are entitled under section 212 [2] to deduct expenses which they incurred in connection with a condominium unit; (2) whether they are entitled under section 164(a)(3) to deduct state income taxes in an amount greater than that allowed by respondent; and (3) whether they are entitled to miscellaneous deductions in an amount in excess of that allowed by respondent. FINDINGS OF FACT Some of the facts are stipulated and are so found. Petitioners, husband and wife, resided in Sunnyvale, California, at the time they filed *128 their petition in this case. They timely filed their joint federal income tax return for 1974 with the Internal Revenue Service Center at Fresno, California. They maintain their books and records and filed their 1974 return on the cash receipts and disbursements method of accounting. Mr. Ong is a pharmacist by profession. We was employed full time (including every other weekend) at a hospital in 1974 and did some part-time work on weekends for a pharmacy. Mrs. Ong is an engineer by profession who was employed full time (including some weekends) during 1974. They have two daughters, one of whom was 12 years of age in 1974 and the other of whom was 14. In 1973, with the prospect of their daughters going to college in the not too distant future, petitioners determined to seek an investment with the hope that it would generate income to help defray the anticipated college costs. On August 1, 1973, they purchased a condominium unit from a corporation known as Seascape in the Spindrift development in Santa Cruz, California. The purchase price was approximately $30,000. The unit was not ready for occupancy until October. Petitioners purchased the unit with the intention of renting *129 it. Seascape's representatives had informed petitioners that there were frequent rentals of Sprindrift units and that they should have no problems renting their's. Petitioners did not contemplate that the unit would be their retirement home. The unit contained two bedrooms, a living room, a kitchen, and a bath. Eight people could be accommodated; two in the master bedroom, two in the other bedroom, two on a pull-out couch in the living room, and two in sleeping bags for which there was space in the living room. The unit was furnished, including kitchen utensils and a stove and refrigerator. It was suitable for renting the year around. Petitioners tried, at the outset, to rent the unit themselves. They placed cards on the bulletin boards where they worked and attempted to advertise by word of month. The gasoline shortage which developed in the fall of 1973 and continued into the spring of 1974 hampered their efforts, which were not very successful. In 1974, they entered into an informal arrangement with Seascape (which ripened into a more formal arrangement in 1975) for Seascape to handle the rental of the condominium unit. Seascape's rental efforts (which continued throughout *130 1976 and into 1977) were not very successful either. In 1977, petitioners listed the unit with an independent real estate agency which sought relatively long-term leases (minimum of two months) as distinguished from short-term vacation arrangements that petitioners and Seascape had sought. The result has been that by 1978 petitioners anticipated much more favorable financial results. Petitioners did not make any persona use of the condominium unit in 1974, nor in the succeeding years. The only times they went to the unit were to straighten it up after an occupant's use had terminated. The daily and weekly rate schedule for the unit's rental in 1974, when Seascape was handling the rental was as follows: DAILY RATE
Number of People
Rate
6% Room Tax
Total
1 or 2
$45.00
$2.70
$47.70
3 or 4
55.00
3.30
58.80
More than 4
8.00/per.
.40
8.40/per.
WEEKLY RATE
1 or 2
$260.00
$15.60
$275.60
3 or 4
285.00
17.10
302.10
More than 4
25.00/per.
1.50
26.50/per.
Utilizing the daily rates, the unit would have had to be rented for 138 days at the $45 rate, or for 112 days at the $55 rate, in order for petitioners' rental income to *131 equal their expenses. On the basis of the weekly rates, the break-even points would have been 24 weeks at the $260 rate and 22 weeks at the $285 rate. For 1974, petitioners received gross rents of $335 and incurred the following expenses: Advertising $ 265
Depreciation
2,178
Insurance
81
Interest
2,069
Replacements
322
Salaries, Management, etc.
570
Telephone
71
Utilities
148
Taxes
509
$6,213
For 1975 and 1976, they received gross rents $380of and $410, respectively. The record indicates that their expenses for those years were about the same as for 1974. Petitioners' other sources of income for 1974 were their salaries of $39,672 (from which federal and state income taxes and FICA tax of $8,950 were withheld), interest income of $366, and a state income tax refund of $117. On their 1974 return, petitioners claimed a deduction from gross income of $5,878; the excess of the rental expenses over rental income. Respondent disallowed the total amount of the expenses ($6,213) as expenses deductible from gross income. However, he allowed the interest and taxes as personal expenses deductible from adjusted gross income. California state *132 income taxes in the amount of $1,059.63 were withheld from the salaries and wages paid to petitioners by their employers in 1974. Petitioners claimed a deduction for state income taxes of $2,215 for that year. Respondent disallowed $1,164.37 of the claimed deduction. Petitioners claimed miscellaneous dedutions in the total amount of $2,067. In his notice of deficiency, respondent allowed $1,659 of that amount, and disallowed the remainder of $408. The record does not establish the computation of the amount disallowed. OPINION Issue 1. Rental Expenses -- Section 212, dealing with expenses for production of income, provides: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- * * *
(2) for the management, conservation, or maintenance of property held for the production of income; * * * In the present case, respondent has not challenged the ordinary and necessary character of the expenses relative to petitioners' condominium unit, nor does he contend that such expenses were not paid or incurred. His position is, simply, that the condominium unit was not held *133 by petitioners for the production of income. We disagree, and hold for petitioners on this issue. Whether petitioners acquired and held the property primarily for the purpose of producing income is a question of fact to be determined from all the facts and circumstances of the case. No single factor is controlling, but greater weight is given to objective facts than to the taxpayer's mere expression of intent. Johnson v. Commissioner,59 T.C. 791, 815 (1973), affd. 495 F.2d 1079 (6th Cir. 1974). With a demonstrable need to augment their salarly income to help defray the anticipated costs of college education of their two children, petitioners sought an investment which would generate income. Relying upon representations of Seascape, the developer of the Spindrift condominium complex, that there were good opportunities to rent a condominium unit, petitioners purchased their unit. They equipped and furnished it and tried, at first, to rent it themselves. They were not particularly successful due, in part, to the shortage of available gasoline in late 1973 and early 1974 and, in part, we suspect, to the nonprofessional character of their efforts. *134 Next, they turned to Seascape, with a slight improvement, but not nearly sufficient to generate income equal to expenses. Still endeavoring to improve the financial picture, in 1977 they engaged an independent real estate agency to handle the rental of the condominium unit and turned to leases for longer periods than the weekly and daily rentals previously sought. This latter approach has been more rewarding in its financial results. In must be noted, too, that petitioners have not used the condominium unit for their own personal purposes, not is it intended as the place for their retirement. The taxable year here involved was the first year of petitioners' ownership, and it is not unusual for a profit-oriented enterprise to suffer losses in its initial stages. To their credit, petitioners have consistently sought to minimize losses and to turn the corner so as to derive profits. Petitioners are persons of modest circumstances. They both work (one of them at two jobs), often on weekends. The record is devoid of evidence that they were affluent individuals, interested primarily in having the tax collector "share in the cost" of a vacation home. See Engdahl v. Commissioner, *135 72 T.C.     (No. 56, July 11, 1979). After carefully weighing all of the facts and circumstances, we are persuaded that the condominium unit in issue was property held by petitioners for the production of income, within the meaning of section 212(2), and we hold that they are entitled to the deductions they claimed with respect thereto. Issue 2. State Income Taxes -- On their 1974 return, petitioners deducted state income taxes in the total amount of $2,215, composed of $1,050.63 withheld by their employers for 1974 in that year and $1,164.37, being their total state income tax liability for 1973. For 1973, state income tax withheld for that year was actually in excess of petitioners' total tax liability and they received a refund of that excess ( $117) in 1974. As nearly as can be determined, from the testimony of petitioners' return preparer, the inclusion of the u973 total tax liability in the 1974 deduction is predicated upon the adoption by California of the withholding system in 1971, which compelled petitioners to pay two years' taxes in one year; their 1970 taxes when they filed their return for that year on April 15, 1971, and their 1971 taxes via current *136 withholdings. But, as was pointed out to petitioners at trial, they could and should have deducted both years' taxes when they filed their 1971 return on April 15, 1972. Thus, there was no "catching up" to be done when petitioners filed their return for 1974. As cash basis taxpayers, petitioners were entitled to deduct for 1974 the state income taxes which they paid by way of withholding in that year; i.e., $1,050.63. Respondent has allowed them a deduction for that amount. They are entitled to no more. Respondent is sustained on this issue. Issue 3. Miscellaneous Deductions -- Petitioners claimed miscellaneous deductions in the aggregate amount of $2,067 on their 1974 return. Respondent determined that $1,659 of that amount was allowable as a deduction and disallowed the remainder. The burden is upon petitioners to establish error in respondent's determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. They introduced no evidcence on this issue and, consequently, they failed to carry their burden.Accordingly, respondent is sustained on this issue. * * *
In accordance with the foregoing, *137 Decision will be entered under Rule 155.
Footnotes
1. Pursuant to General Order No. 6, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.
2. All section references are to the Internal Revenue Code of 1954, as amended, and in force for 1974.↩